### Vincent, et al. v. Edmonson County Board of Education.

(Decided March 8, 1916.)

### Appeal from Edmonson Circuit Court.

1. Schools and School Districts—Selection of Site for School House.—Under subsection 11 of section 4426a of the Kentucky Statutes, the county board of education has the right to select sites for schoolhouses; and, after it has selected a site, it may rescind its action and select a different site.

2. Schools and School Districts—Selection of Site for School House.—The action of a county board of education in selecting a site for a schoolhouse under subsection 11 of section 4426a of the Kentucky Statutes, will not be disturbed by the courts unless it is made to appear that the board has, in the selection of the site, abused a sound discretion.

JOHN B. RODES, JOHNSON & JOHNSON, M. M. LOGAN and ORA E. HAZELIP for appellants.

JOHN A. LOGAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Affirming.

This is a contest over the selection of the site for a school house.

For perhaps forty years or more the school house in Duvall district, now known as subdistrict No. 8 in educational division No. 6, in Edmonson County, was located near Bear Creek in the southern end of the district. In July, 1914, the county board of education bought a new site nearer the centre of the district, and prepared to erect a new school house thereon, by having the necessary lumber delivered there.

Later, however, the board of education abandoned the new site and moved the material to the old site and began preparations for building the school house there. This suit was thereupon instituted by five citizens and tax payers of the subdistrict against the Edmonson County Board of Education and its members, to enjoin them from building the school house upon the old site, and to require them to build it upon the new site.

The basis of the suit is, (1) that the board of education did not have the right to rescind its action by which it abandoned the new site and undertook to build the school house upon the old site; and (2) that the old site where it is proposed to erect the school house is located within two hundred yards of the southern end of the district and is inaccessible on account of the surrounding bluffs, cliffs and creeks.

A large number of depositions were taken, and upon the trial, the chancellor dismissed the petition. The plaintiffs appeal.

Of the two grounds relied upon by appellants, one is a question of law; the other of fact. Of these in their order.

1. Appellants insist that the case is controlled by section 4439 of the Kentucky Statutes, which gives to the trustees the power to change the location of a school house with the right, to a majority of the school electors of any district, to appeal from the decision of the trustees in the location of school house, or site for the same, to the county superintendent of the county, whose decision in the case shall be final.

Applying this statute to the facts of this case, the appellants insist that after the county board of education had selected the new site, its action could only be annulled by an appeal by a majority of the school electors of the district to the county superintendent; and, as no appeal has ever been taken, the action of the board in selecting the new site remains in full force and effect.

Appellees contend, however, that section 4439, *supra,* relied upon by the appellants has been repealed by the subsequent Act of 1908, now known as section 4426a of the Kentucky Statutes. By comparing the provisions of section 4439 and the other provisions of the school law in force previous to 1908, it will be seen that the Act of 1908 revolutionized the former school law of the State, in many respects.

Section 4439 confided the management of the schools to the trustees elected under the law prior to 1908, and gave them the right to locate the school buildings, with an appeal to the county superintendent. It further required the location of the school house to be as near as practicable to the centre of the district.

But, subsection 11 of the Act of 1908 (Ky. Stats., 4426a), gives to the county board of education the power to build school houses and to select the sites therefor, nothing being said about locating it near the centre of the district.

The language of subsection 11, *supra*, in part, is as follows:

"The county board of education shall have the power to purchase, lease or rent school sites, to build, to repair and to rent school houses, purchase maps, globes, charts, school furniture or other apparatus necessary to the efficient conduct of the schools of the county, and said county board is hereby vested with the title, care and custody of all school houses, sites, or other property belonging to the districts of their several counties and when in the opinion of the board any site for school house has become necessary, they may sell and convey the same in the name of the county board of education. It shall have the power to receive any gift, grant or donation for the use of the schools within their respective counties, and all conveyances of real estate which shall be made to said county board of education shall vest the property in said board and their successors in office for the use and benefit of the schools of the county. It shall have the power to condemn any real estate necessary for school purposes in any district and may proceed to do so in the manner provided for by law for the condemnation of lands for railroad purposes."

The precise question here presented was before this court in Ritter v. County Board of Education of Edmonson County, 150 Ky., 847. The facts in that case are peculiarly like the facts in the case before us. There, as here, the school had been maintained on the old site for many years, when the county board of education acquired a new site and had let a contract for the building of a new school house upon the new site. Shortly thereafter, the board of education rescinded its action selecting the new site, and directed the school house to be built upon the old site. And there, as here, it was contended

tha⌣ the board of education had no right to retreat from its action by which it had selected a new site.

But, in denying that contention, this court said:

"There is nothing in the statutes to prevent the board from changing its mind and rescinding the order referred to. It has a perfect right to do so and to select another place for the erection of the school house."

Section 4439 being the older statute, it was repealed by section 4426a in so far as it conflicts with the latter.

2. The authority, therefore, to select the site for school houses resting solely with the county board of education, its action in that respect will not be disturbed by the courts unless it is made to appear that the board has, in the selection of the site, abused a sound discretion. Under the law there are, however, certain limitations upon the power of the board of education in performing this duty. One is, that no subdistrict may contain fewer than twenty-five children of school age; and whenever the number falls below twenty-five, the board must, in order to maintain the school in that subdistrict, change the boundary thereof so as to include a sufficient number; or, it may, under certain contingencies, consolidate that subdistrict with another contiguous subdistrict, in which latter event the board will cause to be built or require, a school house located at some point convenient to the patrons of the consolidated school subdistrict.

Duvall district contains only twenty-six children of school age, and its boundary has been extended more than once in late years because it became necessary to do so in order to preserve the requisite number of school children. These questions, not always easy of solution, must be taken into consideration by the board of education; and, in their solution it necessarily follows, that a reasonably broad discretion must be allowed. The superintendent being now a member of the board of education, the right of appeal to him has been withdrawn.

It will be presumed that the county board of education acted in good faith in selecting the site for this school building, and that in doing so it had in mind the statutory requirements above referred to concerning the number of children of school age residing in the district, and the probability of a change in boundary from time to time, to preserve the district and maintain the

school, as well as the important requirements as to accessibility and convenience for the children in the district at the time the site was selected.

The proof shows there are twenty-one families in the subdistrict, and that sixteen heads of families signed a petition asking the board to select the old site. Eleven heads of families testified in support of the old site, while four heads of families testified that the new site was to be preferred.

We do not deem it necessary to go into a detailed analysis of the proof. It is not the court's duty to select a site; it is only to determine whether the board of education abused a sound discretion in performing that duty. The weight of the proof is largely with the board of education; and, if we had any doubt upon the question, it must be resolved in favor of the board of education and the finding of fact by the chancellor, which sustained the board. Not only does the good faith of the board of education stand unimpeached, but, under the rule by which we will not set aside a finding of fact by the chancellor where the proof is contradictory, we will not disturb his judgment in this case.

Both the law and the facts are with the appellees.
Judgment affirmed.