## Bell's Committee v. Board of Education of Harrodsburg, Kentucky.

(Decided November 4, 1921.)

### Appeal from Mercer Circuit Court.

1. Eminent Domain—In Furtherance of Public Purpose—Delegation of Authority.—The right of eminent domain is inherent in the sovereignty, but it may be exercised only in furtherance of a public purpose and the right may be delegated by legislative enactment to a governmental agency or other corporation to be exercised by them only for such purposes, and only when the delegating statute clearly confers the power, since it will not be inferred by implication.

2. Eminent Domain—Schools and School Districts.—Boards of education of cities of the fourth class in this Commonwealth were given the power to condemn land "necessary to the proper accomplishment of the purpose for which said board is created" by section 3 of chapter 14, Acts of 1920, and the statute does not limit the board, either as to the character or quantity of real estate to be condemned for the purpose indicated, except they will not be allowed to condemn more than is reasonably necessary for the purpose; and the judgment in this case authorizing such board to condemn 12.9 acres, including a residence, will not be reversed on appeal, either because of the quantity condemned or because a residence is located thereon, since the evidence shows the necessity for the amount and there is nothing in the statute forbidding the condemning of a residence.

3. Eminent Domain—Direct Damages—Instructions.—The practice in condemnation proceedings by such boards is governed by the same rule prevails in condemnation of rights of way by railroad companies and the same measure of damages prevails in both cases. Therefore, an instruction which limits the amount of the direct damages to the difference between the actual value of the entire tract immediately before, and the actual value of the remaining portion immediately after, the taking of the amount condemned, was proper, since that is the prevailing measure of direct damages in railroad condemnation proceedings.

4. Appeal and Error—Setting Aside Verdict—New Trial.—A verdict of a properly instructed jury will not be set aside as flagrantly against the evidence unless it clearly appears to have been rendered under the influence of passion or prejudice, or is so contrary to the weight of the evidence as to shock the conscience of the court. Within this rule it is not sufficient to authorize a new trial that the verdict appears to be against the preponderance of the testimony, and in determining the weight to be given testimony in such cases courts should not consider alone the number of the witnesses testifying upon the issue, but should view their testimony in the light of reason, probability and human experience.

E. H. GAITHER, E. M. HARDIN and E. C. O'REAR for appellant.

C. E. RANKIN and J. F. VANARSDALL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

William Con Bell, a person of unsound mind, owned a tract of land in Mercer county, Kentucky, containing in the neighborhood of three hundred acres, 12.9 acres of which were within the corporate limits of Harrodsburg, a city of the fourth class. On the 9th of December, 1920, the appellee, board of education of Harrodsburg, Kentucky, instituted this proceeding in the Mercer county court against Bell, the owner of the land, and his com-

mittee, the appellant, State Bank and Trust Company, of Harrodsburg, Kentucky, to condemn that portion of the tract lying within the corporate limits of Harrodsburg as being necessary for a suitable site for school buildings and for school purposes for the public city high school of Harrodsburg, under the control of the board. The proceedings were instituted and practiced in the same manner as is provided for the condemnation of land for railroad purposes. Sections 835-840, inclusive, Kentucky Statutes. The required allegations showing the right of the board to condemn the land and the necessity for its acquisition were duly made and the court appointed three commissioners possessing the requisite qualifications to assess the damages to the owner of the land and they reported the value of the land taken to be $20,000.00, and damages to the remainder at the sum of $1,000.00. The committee, on behalf of its ward, filed exceptions to that report, but before they were tried it moved the court to dismiss the proceedings upon the ground that the board of education had no authority to maintain it and that the court had no jurisdiction to hear and try it. That motion was sustained and the board prosecuted an appeal to the circuit court, where the same motion was again made by the committee, but that court overruled it. Whereupon both parties filed exceptions to the commissioners' report and upon trial thereof by a jury there was a verdict awarding the owner $18,000.00 for the value of the land proposed to be taken and $2,000.00 as damages for the remainder and $400.00 as incidental damages. An appropriate judgment was rendered on the verdict and the committee's motion for a new trial having been overruled, it, on behalf of its ward, prosecutes this appeal, relying for a reversal principally upon three grounds, which are: (1) that the board of education, if it had power at all to condemn land for school purposes, could not acquire thereby exceeding one acre and in no event could it condemn any land upon which there was located a residence of the owner; (2) that the court erred in its instructions to the jury upon the measure of damages; and (3), that the verdict is flagrantly against the evidence. We will dispose of these grounds as briefly as possible in the order named.

1. The right of eminent domain rests primarily with the sovereignty and may not be exercised except in furtherance and in aid of a public purpose. (Kentucky Constitution, section 13; 10 R. C. L., 11, 12 and 27, and 15

Cyc. 556-557). But it is within the province of the sovereignty, inherently possessing the right, to delegate it or the power to exercise it, to other agencies performing public service, whether they are arms of the government or private corporations whose duties are of such a public nature as to render it expedient for them to possess it. Cyc., *supra,* and R. C. L., *supra,* 195. The delegation of the power is usually exercised by the legislature through a statutory enactment and such statutes are to be strictly construed, since the power will not be conferred by implication. Cyc., *supra,* 567, and R. C. L., *supra,* 196-197, and the many cases referred to in the notes. With these briefly stated principles in mind we will proceed to examine our statutes to see if the board of education of Harrodsburg possessed the power to maintain this proceeding.

Prior to the enactment of chapter 14, Session Acts 1920, there was no authority or power to exercise the right of eminent domain vested in any of the public school authorities of the state, except in the various county boards of education, upon which the authority was delegated by act of March 24, 1908, now subsection 11 of section 4426a, vol. 2, Ky. Stats. Prior to the latter enactment the power to condemn land for school site purposes was vested in the district trustees of the various school districts in the county and which authority was conferred by a statute passed in 1893, and it now appears in vol. 2, 1915 edition, Kentucky Statutes, as section 4439. That statute limited the right of the trustees to condemn land by saying: "But they shall not have the right to condemn any private property which is used by the owner as a residence, garden, orchard or burying ground. The quantity of land thus condemned shall in no case exceed one acre."

The 1908 act delegated to the county board of education the power "to condemn any real estate for school purposes in any district and may proceed to do so in the manner provided for by law for the condemnation of land for railroad purposes." And in section 18 (now subsection 19 of section 4426a, Kentucky Statutes) all laws in conflict with that act were expressly repealed. Hence, in the case of Vincent v. Edmonson County Board of Education, 169 Ky. 34, it was held that section 4439 was repealed by the 1908 act in so far as the selection and acquisition of school sites were concerned. Evidently after the passage of the 1908 act the only authority pos-

sessing the power to condemn land for school purposes was the county board of education and it was not limited either in the quantity or character of land so condemned, save and except it could condemn no more than was reasonably necessary for that purpose.

In 1916 the legislature enacted chapter 24, Session Acts for that year, 162, the title of which reads: "An act to repeal chapter 113 of the Kentucky Statutes, Carroll's edition of 1915, being sections 4363 to 4535h, inclusive, except sections 4421a and 4421b and sections 4527 to 4535c inclusive, and re-enact the same chapter with the articles and sections corrected, rearranged, simplified, and the repealed sections and parts of sections omitted, and fixing the time of year at which text book adoptions shall be made." That act retained the management of the public schools in the county board of education as it had been since the passage of the act of 1908 and in section 97 thereof, subsection 11 of the 1908 act, was expressly re-enacted and section 113 thereof was but a re-enactment of the old 4439 section, and wherein the right to condemn land was limited as in the latter section, but the authority to do so was given to the county board of education instead of to the school trustees. So that in the 1916 act we have one section giving the authority to the county board of education the right to condemn land for school purposes without limitation (in section 97), and one limiting that right (section 113). But whether the limitation, as prescribed in section 113 of that act, is now the law applicable to the acquisition of school sites for the common schools of the state we need not determine in this case for the reasons hereinafter stated.

Conceiving, apparently for the first time, the necessity for city boards of education and boards of trustees of graded common school districts to possess the right of eminent domain to enable them, when necessary, to condemn land required for school purposes, the legislature in 1920 enacted chapter 14, *supra,* and chapter 25, Session Acts 1920, 112, the one relating exclusively to public schools in cities of the fourth class and the other to graded common school districts governed by trustees. Subsection 3 of chapter 14 (the act relating to schools in cities of the fourth class) says:

"It (the board of education) shall also have power, when unable to contract with the owner of any real estate necessary to the proper accomplishment of the purpose for which said board is created, to institute condemna-

tion proceedings in accordance with the law governing railroad corporations operated or incorporated under the existing laws of this Commonwealth, under laws which may hereafter be enacted; and to have in such proceedings the same rights, powers, privileges and restrictions, as are now granted to or conferred upon such railroad corporations. Such board of education shall have all the powers of other school districts under the laws of this state, except as herein provided.''

Chapter 25, Acts 1920, delegated to the trustees of graded common school districts the same right of eminent domain as was delegated to boards of education of cities of the fourth class by subsec. 3 of chapter 14, except the quantity of land authorized to be condemned under chapter 25 was limited to ten acres. It is conceded by counsel for appellants that subsection 3 of chapter 14, 1920 Acts, confers the power of eminent domain upon appellee, board of education, but they insist that the last sentence in that section limits the right of the board to that which may be exercised for the benefit of the common school districts of the state in such cases, and that section 113 of the 1916 act limits the right of condemnation as to those districts to only one acre of land, and withholds the right to condemn any quantity whereon is located a residence, garden, orchard or burying ground. The language in subsection 3 which appellants' counsel insists limits the right of the board, as indicated, says: ''Such board of education shall have all the powers of other school districts under the laws of this state, except as herein provided.'' Whatever may be the full meaning of that sentence we are thoroughly convinced that it was not the intention of the legislature in incorporating it in section 3 of the act referred to, to place any limitation upon the right of the board to condemn land in any of the respects contended for, nor was it intended thereby to limit the right of the board to the authority which other school districts possessed with reference to the condemnation of land. That the legislature realized that the quantity of land to be acquired by the board of education of cities of the fourth class should be limited only by a reasonable necessity is shown in section 2, chapter 14, Acts 1920, relating to schools of fourth class cities, wherein it gave the board the right ''to purchase and hold all property, real and personal, deemed by it necesary for the purposes of public education,'' and ''to build and construct improvements for such purposes and to hold or sell the

same.'' It is true that power ''to purchase'' cannot be construed as conferring the power to condemn, but it is very persuasive that if the legislature did not intend in the one case to limit the quantity, when acquired by purchase, except by that which was deemed by the board ''necessary for the purposes,'' it also did not intend by the following section to place any further limitations upon the power of the board *to condemn* than upon its power *to purchase,* and that it intended in both cases to leave the quantity to that which was ''necessary for the purposes of public education,'' the existence of the necessity in each case being the same.

The last sentence of section 3 of the act (quoted above), so much relied on by counsel for appellants, is at the end of all the enumerated powers of the board conferred by the act, and it was the evident intention, by the general language employed, to confer upon the board all other powers possessed by other school districts, ''except as herein provided.'' The word ''herein'' in the section is not confined to the section in which it is used, but to the entire act of which that section is a part, and in the very section where it is used the board was given the power to condemn without limitation, either as to quantity or character, except, as we have before stated, the quantity should be limited by a reasonable necessity.

We therefore conclude that whether the limitations, hereinbefore referred to, upon the right to condemn land for the use of *common school districts* is or is not the law at present, boards of education of cities of the fourth class are not circumscribed by those limitations; from which it follows that the circuit court did not err in overruling the motion to dismiss the proceeding. The evidence is amply sufficient to sustain the verdict of the jury in finding that the amount of land proposed to be condemned was reasonably necessary for the purposes of the board and it had the right to condemn it notwithstanding there existed a residence thereon. Ground (1) must, therefore, be denied.

2. The criticism of counsel under this ground, (2), is directed exclusively to instruction No. 2, upon the measure of damages given at the instance of appellee and which says:

''If you find for the plaintiff you will find for the defendant, William Con Bell, such a sum as you may believe from the evidence is the fair and reasonable cash value of the tract of land taken, considering it in relation

to the entire tract of which the said strip is a part, and also such other direct damage, if any, as you may believe from the evidence will directly result to the remainder of the tract by reason of the situation in which it is placed by reason of taking said tract, and such additional fencing or other improvements, if any, as may be necessary for the reasonable enjoyment of the remaining tract by reason of the taking of said tract, but your finding under this instruction should not exceed in all the amount which you may believe from the evidence is the difference between the market value of the entire tract of land immediately before and the market value of the remainder after the taking of said tract containing 13¾ (12.9) acres, excluding from both estimates any enhancement of the value of the land by reason of the prudent building or operation of the proposed school.''

The statute (section 3 of chapter 14, 1920 Acts, *supra*) expressly directs that the proceedings shall be ''in accordance with the law governing railroad corporations operated or incorporated under the existing laws of this Commonwealth . . . and (the board) to have in such proceedings the same rights, powers, privileges and restrictions, as are now granted to or conferred upon such railroad corporations.'' Necessarily, this language means that the proceedings by the board to condemn land for school purposes must be conducted in all respects as are similar proceedings instituted by railroad companies.

The complained of instruction is in the main an exact copy of one given in section 249, page 284, in Hobson on Instruction to Juries, and it is taken from an approved instruction in the case of Big Sandy Railroad Co. v. Dils, 120 Ky. 563. The same instruction, in substance, was approved in the cases of Broadway Coal Mining Co. v. Smith, 136 Ky. 725; L. & N. R. R. Co. v. Hall, 143 Ky. 497; L. & N. R. R. Co. v. Ingram, 12 Ky. L. R. 456; Elizabethtown and Paducah Railroad Co. v. Helm's Heirs, 8 Bush, 681, and other cases in notes to section 249 of the work last referred to. All of the cases from this court to which our attention has been directed, or which we have been able to find, limit the amount of *direct* damages recoverable in like cases to such an amount as represents ''the difference between the actual value of the entire tract immediately before, and the actual value of the remainder immediately after'' the taking of the quantity condemned, excluding from both estimates any enhance-

ment of the remainder of the land by reason of the purpose for which the quantity condemned was taken. It is this feature of instruction No. 2 which counsel strenuously criticises. In view, however, of the cases referred to settling the question contrary to the contention of counsel we are unable to accept his view, and this ground is also held to be without merit.

3. The evidence, as is usual in such cases, was widely contradictory. Some of the most extreme witnesses testifying for appellants fixed the value of the quantity of land taken at from $35,000.00 to $40,000.00, and the damage to the remainder of the tract at from $8,000.00 to $10,000.00, but some of those same witnesses say that the entire tract was reasonably worth on the market from $65.00 to $75.00 per acre. It is difficult to conceive how the whole tract of land which is worth, according to the highest price given by these witnesses, only about $21,000.00, could be damaged from $35,000.00 to $45,000.00 by taking only about thirteen acres of it, leaving untouched from 275 to 287 acres. The proposition to our mind is preposterous, and the testimony given by such witnesses must have been superinduced by motives clearly affecting it. Other witnesses for appellants fix the total amount of damages higher than the verdict of the jury, but a number of witnesses testified for the board of education and they fixed the damages, some of them lower than the verdict, and some of them at the same amount of, or slightly above it. It has often been held by this court that when the testimony was thus contradictory it was the peculiar province of the jury to reconcile the contradictions and arrive at a true verdict in the light of all the facts and circumstances. It is only where the verdict at first blush strikes the mind of the court as having been influenced by passion or prejudice, or some other motive on the part of the jury which caused its verdict to shock the conscience of the court, that it will be set aside as flagrantly against the evidence. We do not regard the testimony in this case as of such a nature as to authorize us to set aside the verdict on this ground, and it, like the other two grounds considered, must likewise be denied.

Wherefore, there appearing no error prejudicial to the substantial rights of appellants, the judgment is affirmed.