RENDERED:  DECEMBER 16, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1470-MR

CITY OF COLD SPRING                                                          APPELLANT


APPEAL FROM CAMPBELL CIRCUIT COURT
v.          HONORABLE JULIE REINHARDT WARD, JUDGE
ACTION NO. 20-CI-00926


CAMPBELL COUNTY BOARD OF
EDUCATION                                                                    APPELLEE


OPINION
REVERSING
AND REMANDING

** ** ** ** **

BEFORE:  COMBS, LAMBERT, AND TAYLOR, JUDGES.

COMBS, JUDGE:  This case involves the proper exercise of the power of eminent

domain.  At issue is whether a school board possesses the right to invoke that

power in order to acquire real property owned by a city.

The Appellant, the City of Cold Spring (the City), appeals the

interlocutory order of the Campbell Circuit Court that concluded that the Campbell

County Board of Education (the Board of Education or the Board) was entitled to exercise the power of eminent domain to acquire real property located at U.S. 27 North and Industrial Road in Cold Spring, Kentucky. Because there is no express -- or necessarily implied -- statutory authority permitting a Board of Education to condemn property owned by the City, we are compelled to reverse.

The Board of Education sought to acquire property for the purpose of developing a new public middle school to serve students in the northern half of the Campbell County school district. A new school was expected to alleviate the substantial enrollment strain on the existing middle school.

The Board located suitable property and communicated with its owner, Disabled American Veterans, Inc. (DAV), throughout 2020. While it had owned the property since the 1960's, DAV representatives indicated that it intended to relocate its national headquarters to a new facility in Erlanger. On September 16, 2020, a special meeting of the Board of Education was conducted to allow members to tour the property. Its interest in acquiring the property was made public.

On October 2, 2020, the Board of Education made an offer to purchase the property within the range of estimated value communicated to it by DAV's real estate agent. After receipt of the offer, DAV's agent advised that multiple parties were interested in purchasing the property and encouraged the

Board to submit its best offer. On October 30, 2020, the Board of Education submitted a second and higher offer, explaining that it would prefer to obtain the property through negotiated purchase rather than through eminent domain proceedings.

On November 30, 2020, DAV informed the Board of Education that it would **not** sell the property to the Board. The Board of Education believed that DAV preferred to sell the property to a private developer, A1. Neyer, LLC (Neyer), instead. The Board was convinced that the City intended to buy the disputed property in order to thwart its condemnation of the property and that the City would then transfer it to Neyer for private development. However, without the knowledge of the Board, DAV and Neyer had already executed a purchase agreement with respect to the disputed property a couple of weeks before on November 13, 2020.

On December 10, 2020, the Board of Education posted the agenda for its regularly scheduled December 14, 2020, meeting. The agenda indicated a need for executive session to discuss exercising its power of eminent domain to acquire the DAV property. At this meeting, the Board of Education approved acquisition of the disputed property through condemnation proceedings.

On December 17, 2020, the City conducted a special meeting and authorized its mayor and city attorney to negotiate the purchase of the DAV

property. Within a matter of days, the City Council approved the plan in executive session.

On December 20, 2020, Neyer assigned its purchase agreement with DAV to the City. In exchange, the City agreed to grant to Neyer the exclusive right to develop the disputed property and to own the private investment made to that end. The City agreed to collaborate with Neyer to secure government financing of the development and to cooperate with Neyer in any zoning and permitting matters that might arise. The City agreed that "the future uses of the Property, along with all development plans, designs, budgets, schedules and other requirements of such development shall be determined by [Neyer], in [Neyer's] sole and absolute discretion." Finally, the City agreed to assign back to Neyer its rights under the purchase agreement if it decided not to purchase the property or if it defaulted on the terms of the underlying purchase agreement.

On this same date, December 20, 2020, the Board of Education filed its petition for condemnation pursuant to the provisions of KRS[1] 162.030. The Board of Education alleged that despite its good faith efforts to purchase the property through negotiation, it had been unable to secure a satisfactory contract to acquire the real property from DAV. It sought an order: (1) concluding that it had a right to condemn the subject property and (2) appointing commissioners to

---

[1] Kentucky Revised Statutes.

-4-

determine the value of the property and to award an amount of compensation required for the taking. It recorded a notice of *lis pendens* the following day.

On December 23, 2020, pursuant to the provisions of KRS 416.580, the Campbell Circuit Court appointed three commissioners to report on the amount of compensation to be awarded for the taking of the disputed property. Also on this date of December 23, 2020, the City filed an "*ex parte* motion to intervene." It asserted a legal interest in the property as reflected in the assignment of the purchase agreement between DAV and Neyer. The Board of Education challenged the City's authority to intervene in the condemnation proceeding, arguing that it was a summary, expedited proceeding that did not envision intervention by other parties.

The City nevertheless tendered an intervening complaint on January 15, 2021. The court took the matter under submission. On January 21, 2021, the commissioners submitted their report and award.

By order entered on February 10, 2021, the Campbell Circuit Court granted the City's motion to intervene in the eminent domain proceeding. The tendered complaint was ordered filed. In its complaint, the City acknowledged that DAV remained the record owner of the disputed property but described its (the City's) equitable interest in it.

While there is no indication that a motion to dismiss is permitted in condemnation proceedings, DAV nonetheless filed just such a motion in lieu of an answer on February 15, 2021. It argued that the Board of Education could not exercise the right of eminent domain because it had failed to secure final site approval from the Kentucky Department of Education. The Board challenged DAV's motion to dismiss. In addition, the Board filed a motion for a more definite statement with respect to the City's intervening complaint.

Thereafter, the City filed an amended intervening complaint and a motion for declaration of rights. It asked the court to authorize its purchase of the disputed property and to order the Board to remove the *lis pendens.* It contended that the condemnation action violated its rights.

On April 8, 2021, DAV deeded the disputed property to the City by special warranty deed. Excepted from the usual covenants and warranties was any claim related to the pending condemnation proceedings. The City immediately filed a motion to dismiss, arguing that the Board of Education could not condemn public property. The Board of Education responded and disputed the underlying premise of the motion.

On June 24, 2021, this case was transferred to a different division of the Campbell Circuit Court. The court set the matter for oral argument to hear the parties' positions on the outstanding motions to dismiss.

In an order entered on September 10, 2021, the circuit court denied the motions of both the DAV and the City to dismiss the eminent domain proceedings. The matter was finally set for the hearing required by the provisions of KRS 416.610 to determine the right of the Board of Education to take the disputed property. The hearing was scheduled to be conducted on October 6, 2021.

Meanwhile, the City filed its answer to the Board of Education's petition. Once again, the City argued that the disputed property could not be the subject of eminent domain proceedings because it was public property.

Upon oral motion of the Board of Education, DAV was dismissed from the action before the court's proceedings began on October 6, 2021. The City stipulated that it had sought to purchase the disputed property in order to prevent the Board from exercising its power of eminent domain to acquire it and that as record owner of the property, the City's rights would be adjudicated by the eminent domain proceedings.

Following the evidentiary hearing, the Campbell Circuit Court found that the disputed property:

> is the most promising because of its location, topography, condition, and multiple access points. The location would allow students that are currently transported from the North end of the County to have a shorter bus ride. Buses and parents could enter and exit in a different location from each other. Buses could potentially be

stored on site, saving additional travel time. In addition, based on . . . calculation prepared following the tour, renovating the Property versus building a new school would save the Board approximately 7 million dollars.

*  *  *  *

The City purchased the Property in an effort to circumvent the Board from acquiring the Property by eminent domain. The Property was purchased for economic development, but the City intends to sell the Property to Neyer or another private developer. There is no evidence that the City intends to use industrial revenue bond or other government funding to finance the Property.

After the filing of the condemnation action, the Board began the process of complying with the KDE [Kentucky Department of Education] requirements, set forth under 702 KAR[2] 4:050, to acquire the Property. KDE is the state regulatory agency for all public K-12 schools in Kentucky. To acquire property for a school, a school board must get approval from KDE. The Board does not need permission from KDE to file an eminent domain action. The Board has funds to purchase the Property without borrowing money.

*  *  *  *

The Board worked with KDE to acquire the Property. One requirement was a title search, which a 60-year title search was conducted and was satisfactory to KDE. . . . On October 5, 2021, the Kentucky Board of Education . . . gave the Board approval to acquire the Property.

---

[2] Kentucky Administrative Regulations.

-8-

The circuit court rejected the City's contention that the disputed property was being used or held for public purposes and that it could not, therefore, be taken through the exercise of the Board of Education's power of eminent domain. The court concluded that the Board had demonstrated a need for a new middle school and the need to condemn the disputed property specifically; that it had negotiated for the purchase of the property in good faith; that there was reasonable assurance that the school project would be completed; and, parenthetically, that use of the property would promote economic development for the City. It concluded that the Board of Education was entitled to condemn the property pursuant to the provisions of KRS 416.540-416.670 and authorized the Board to take possession of the property upon payment into court the amount of compensation awarded by the commissioners. Its order was entered on November 23, 2021.

On November 29, 2021, the Board of Education paid the award into court and demanded possession of the property. On December 2, 2021, the court entered its interlocutory order and judgment (including the legal description of the property taken).

On December 10, 2021, the City filed its notice of appeal. On December 17, 2021, the funds paid into court by the Board were released to the City.

On appeal, the City argues that the circuit court erred by concluding that the Board could take its property through eminent domain proceedings because the General Assembly authorized the Board to take only private property. It contends that its public property is not subject to the Board's power to take through condemnation. We are compelled to agree.

We begin by noting that the Eminent Domain Act of Kentucky, KRS 416.540-416.670, does not expressly provide for an appeal of a trial court's interlocutory order concerning a condemnor's right to take. However, in *Ratliff v. Fiscal Court of Caldwell County, Kentucky*, 617 S.W.2d 36 (Ky. 1981), the Supreme Court of Kentucky held that constitutional considerations require that an immediate appeal be afforded to a condemnee.

The right of eminent domain is necessarily inherent in a sovereign authority, which may choose to delegate the power of condemnation. "It is within the authority of the General Assembly to define the limits of the right of eminent domain and to establish the specific terms under which the condemning authority may exercise such power." *Kelly v. Thompson*, 983 S.W.2d 457, 458 (Ky. 1998). "[T]he general rule is that a condemnor to whom the power of eminent domain has been delegated may not condemn public property unless authority is expressly or impliedly granted by statute." *Kentucky Heritage Land Conservation Fund Board v. Louisville Gas and Electric Co.*, 648 S.W.3d 76, 88 (Ky. App. 2022) (citing 29A

-10-

C.J.S. *Eminent Domain* § 61 (2022)).  Statutes delegating the authority to exercise the right of eminent domain are to be strictly construed.  *Bell's Committee v. Board of Education of Harrodsburg*, 192 Ky. 700, 234 S.W. 311 (1921).  Because the scope of the Board's condemnation authority is a matter of statutory interpretation, we review the trial court's conclusion of law *de novo*.

The authority of the Board of Education to exercise the power of eminent domain is expressly set out in provisions of KRS 162.030.  The statute provides, in relevant part, as follows:

> Each board of education may, when unable to make a contract satisfactory to the board with the owner for the purchase of real estate to be used for school purposes, initiate condemnation proceedings pursuant to the Eminent Domain Act of Kentucky (KRS 416.540 to 416.670) . . . .

KRS 162.030.  The title to all property acquired by a school district is vested in the Commonwealth for the benefit of the district board of education.  KRS 162.010.

In considering this statutory delegation of the right to eminent domain, we note the reasoning of a relevant case.  In *Jefferson County By and Through Hollenbach v. South Central Bell Telephone Company*, 555 S.W.2d 629 (Ky. App. 1977), this Court considered the provisions of KRS 76.110(1) conferring the power of eminent domain upon sewer districts.  The statute provides that a sewer district may utilize the power of eminent domain in order to acquire real or personal property necessary for its purposes "whether or not the same are owned or

-11-

held for public use by corporations, associations, or other persons having the power of eminent domain, or otherwise held or used for public purposes." KRS 76.110(1). We observed that this language *expressly* provides that the sewer district's power of eminent domain extends to public property. Separately, the statute provides that the "*method* of condemnation of such property shall be pursuant to the Eminent Domain Act of Kentucky." KRS 76.110(2) (emphasis added).

As noted above, KRS 162.030 provides the statutory basis for the power of eminent domain exercised by the Board of Education. The provision empowers the Board to initiate condemnation proceedings where it is unable to make a satisfactory contract for the purchase of real property "with the owner." The Board isolates the phrase "with the owner" and construes it broadly to encompass the owner of public as well as private property. However, the statute further directs that "the proceedings," and not merely the *method* by which the condemnation is effected, are to be undertaken "pursuant to the Eminent Domain Act of Kentucky. . . ." *Id.* Proceedings undertaken pursuant to the provisions of the Eminent Domain Act are limited to takings of private property. KRS 416.540(1) expressly provides that to "[c]ondemn means to take **private property** for a public use under the right of eminent domain. . . ." (Emphasis added.)

-12-

In *Kentucky Heritage Land Conservation Fund Board*, we considered the nature of the power of Louisville Gas and Electric Company to exercise its right of eminent domain. 648 S.W.3d 76. We analyzed the provisions of KRS 278.502 granting to utility companies providing gas in public service the authority to condemn needed property where "it is unable to contract or agree with *the owner*" and directing that the "proceedings for condemnation shall be as provided in the Eminent Domain Act of Kentucky." (Emphasis added.) Reading the limitations imposed by the provisions of the Eminent Domain Act along with the provisions of KRS 278.502, we acknowledged, without deciding, that the gas company's "power of eminent domain may ordinarily be limited to private property[.]" *Kentucky Heritage Land Conservation Fund Board*, 648 S.W.3d at 88.

The provisions of KRS 162.030 do not expressly, or by necessary implication, expand the boundaries of the power of eminent domain delegated to the Board of Education to encompass the taking of public property. Instead, the statutory authority confines the terms under which proceedings may be initiated by reference to those contained in the Eminent Domain Act limited to the taking of private property. Consequently, we are persuaded that the Board's right to exercise the power of eminent domain does not extend to the taking of public property.

The Board of Education characterizes the City's purchase of the disputed property as a ruse and challenges the nature of the City's intended use of it. However, we are restricted by law to addressing only relevant matters -- not peripheral or speculative issues. The uncontradicted evidence shows that the City had an interest in the disputed property on the date that the condemnation action was filed; *i.e.*, it had been assigned the purchase agreement between Neyer and DAV. The holder of an equitable interest in land clearly has an interest that is compensable in a condemnation proceeding. It was the record owner of the property prior to the court's hearing conducted expressly to determine the Board's right to exercise its power of eminent domain. Public property is not converted to private property -- even where the municipality owns it in a proprietary capacity. The nature of the ownership of the disputed property -- not its use -- controls in this case.

Nevertheless, it is worth noting that the disputed property was conveyed to DAV by the Campbell County Business Development Corporation (CCBDC) subject to deed restrictions aimed at promoting economic growth at the site. These restrictions were implemented as a result of a 1963 agreement between CCBDC and the City. In the agreement, the City agreed to a zone change sought by CCBDC in exchange for the City's continued interest in regulating development

-14-

of the property. The City maintains that its purchase of the disputed property helps it to maintain the agreement's provisions and aims for the public benefit.

The Board argues that the City's contemplated use of the property does not constitute a "public use" as that phrase is commonly used in condemnation jurisprudence. However, the analysis suggested by the Board is not necessary where the City is not seeking to take property through eminent domain. It already owns the property. We have concluded that the Board of Education has not been delegated the power to condemn public property. And the City is not required to prove that the disputed property will be devoted to public use. The City's property is subject to its control, and it may authorize its use as it sees fit.

The Board of Education also argues that its right of condemnation must necessarily extend to the taking of public property; otherwise, its ability to provide for an efficient system of public education is compromised. It is true that the General Assembly is charged by Section 183 of our State Constitution with providing for public education. However, in delegating the right of eminent domain to the Board of Education, the legislature did not expand that power to condemn public property -- even for the laudable purpose and mandatory duty of providing for public education. Consequently, this argument is best directed to our General Assembly as it is beyond our purview.

We reverse the order of the Campbell Circuit Court and remand this case for entry of an appropriate order.

LAMBERT, JUDGE, CONCURS.

TAYLOR, JUDGE, DISSENTS AND DOES NOT FILE SEPARATE OPINION.

BRIEFS FOR APPELLANT:

Brandon N. Voelker
Covington, Kentucky

BRIEF FOR APPELLEE:

Jason V. Reed
Debra S. Pleatman
Covington, Kentucky