# Binder v. County Board of Education of Jefferson County.

(Decided April 20, 1928.)

## Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Eminent Domain.—School trustees held to have obtained fee-simple title to land acquired under condemnation proceedings, under Gen. Stats., 1888, c. 96a, art. 8, sec. 6, and when school trustees ceased to maintain schoolhouse thereon land did not revert to condemnees, and trustees had right to sell land to defendant who had refused to accept it on ground school trustees obtained only easement.

2. Eminent Domain.—Clause in deed of commissioner appointed in condemnation proceedings, under Gen. Stats., 1888, c. 96a, art. 8, sec. 6, whereby land was conveyed to school trustees "for school purposes," held not to create right of reverter after trustees ceased to maintain schoolhouse on land, but school trustees acquired fee-simple title and could convey land to defendant who had refused to accept same under contract on ground such clause created right of reverter.

3. Eminent Domain.—Commissioner appointed in condemnation proceedings, under Gen. Stats., 1888, c. 96a, art. 8, sec. 6, had no authority to limit fee obtained by school trustees under condemnation proceedings by insertion of clause "for school purposes," since he had no authority to convey any less title than condemnation proceedings provided for.

4. Eminent Domain.—Where full and complete consideration is paid for land condemned by school trustees for school purposes, right of reverter does not arise except from clearest and most explicit language.

LEO J. SANDMANN for appellant.

BURWELL K. MARSHALL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On May 3, 1889, the trustees of rural common school district No. 36 in Jefferson county filed their petition in the Jefferson county court against the widow and heirs of E. D. Standiford, deceased, to condemn for school site purposes the real estate involved in this litigation containing about one-half acre. The proceedings were duly and regularly prosecuted according to the then prescribed practice, resulting in a judgment condemning the land and awarding the widow and heirs of E. D. Standiford the sum of $200, representing the value of the con-

demned land, and $45 for extra fencing. The court duly appointed a commissioner to execute deed to the trustees of the district for its benefit, and he did so and acknowledged it and made a report to the court, which was approved, and it was duly recorded by the county court clerk of Jefferson county. The acknowledgment of the deed by the commissioner was couched in this language:

"December 2, 1889, acknowledged in open court, approved, and ordered to record."

On the 9th of that month this order (omitting caption and clerk's signature), or certificate, was made on the records of the Jefferson county clerk's office:

"At a court held for the county aforesaid on the 9th day of December, 1889, came Chapman C. Joyes, commissioner, and produced in court the within and foregoing deed to the trustees of school district No. 36 and executed and acknowledged the same as commissioner for and on behalf of the grantors therein named to be the act and deed, and said, deed, being examined and approved by the judge, is ordered to be *certified to be recorded* and is recorded in my office as clerk of said court. (Our emphasis.)

The deed so executed by the commissioner recited:

"Now the parties of the first and second parts hereto (the widow being of the first part, and the Standiford heirs of the second part), by the said Chapman C. Joyes, commissioner, do hereby grant, bargain, sell, and convey to the parties of the third part (trustees) their successors in office forever *for school purposes* the above-described one-half acre lot of land." (Our emphasis.)

Under various and comparatively recent statutory enactments, by which the county board of education was created and its duties and powers prescribed, it became vested with the title to all public school property theretofore acquired by the various common school districts through and by their then local trustees, and which statutes we will not set out herein, since the title of the plaintiff, county board, to the lot involved, whatever may be its extent, is conceded to be the same as that held by the trustees at the time of the condemnation proceeding, and it is furthermore admitted that such board succeeded to

all of the rights in and to the lot that the board of trustees acquired under such proceeding. See Breathitt County Board of Education v. Back, 214 Ky. 284, 283 S. W. 99, and Williams v. McKenzie, 203 Ky. 376, 262 S. W. 598. The statutory authority for the condemnation proceedings, supra, by the trustees of the district was section 6, p. 1166, of the General Statutes, by Bullitt and Feland, published in 1888. Under such provisions the trustees were empowered to "take land, by purchase or donation, for the purpose of erecting thereon a schoolhouse." It was further provided therein that:

"The trustees 'may change the location of the schoolhouse, sell or dispose of the old site, and use the proceeds thereof towards procuring a new one.' "

It was furthermore provided therein that:

"If they (trustees) cannot agree with the owner of any land most suitable for a schoolhouse site as to the price and terms of purchase and sale thereof, they shall apply to the judge of the county court by petition, in which they shall set forth by metes and bounds the land they seek to condemn, and the county court shall issue a writ of ad quod damnum, directed to the sheriff, to be executed and returned to said court *as in case of condemning lands for the use of railroad and turnpike companies;* and upon return of said writ, duly executed, and upon the payment in court for the benefit of the owner of the amount ascertained by the verdict of the jury, the said court shall issue a writ requiring the sheriff to put the trustees in possession of said lot, and cause a deed to the land, by a commissioner, to be made to the trustees and their successors, which deed shall be duly acknowledged and recorded in the office of the clerk of the county court; and thereupon the title to said lot shall vest in said trustees and *their successors in office."* (Our emphasis.)

On the 5th day of March, 1927, the plaintiff, county board of education of Jefferson county, desiring to relocate the site of the schoolhouse for the district, entered into a contract with defendant and appellant, R. E. Binder, whereby it agreed to sell and convey to him for a named consideration the one-half acre of ground obtained by the condemnation proceedings supra, and later tendered to him a duly executed and acknowledged deed,

but he declined to accept it upon two grounds: (1) That under the condemnation proceedings the school trustees obtained only an *easement* to occupy the condemned lot as long as it maintained thereon a schoolhouse, and that when it ceased to do so the land reverted to the condemnees; and (2) that if mistaken in ground (1), then the clause in the deed of the commissioner appointed in the condemnation proceedings whereby the land was conveyed "for school purposes" created the right of reverter, and for such reasons the tendered deed to him by the county board did not convey the absolute fee-simple title to the lot. On January 5, 1928, plaintiff filed this equity action against defendant in the Jefferson circuit court, praying for a specific performance of the contract for the sale of the lot to him, and in its petition it set out fully and in more detail the facts hereinbefore referred to. Defendant's demurrer to the petition was overruled, and he declined to plead further when the case was submitted to the court, followed by judgment for the amount of the agreed consideration and an order compelling defendant to accept the deed tendered to him, and to reverse that judgment he prosecutes this appeal. The defenses relied on will be disposed of in the order in which they are above stated.

1. The present statute authorizing condemnation proceedings to acquire title to land for school purposes by the county board of education is section 4434a6 (Ky. St.), and it is in practically the same language as is the 1888 statute, supra, under which the title was acquired to the lot here involved. But, whatever the present statute might be on the subject, it would have no effect on the title acquired under the prior statute of 1888, since the rights of the parties would be exclusively governed by the terms of the latter. To our minds its terms are so plain and unambiguous as to be entirely free from doubt. It will be observed that the district trustees of that date were empowered to *purchase* land upon which might be erected schoolhouses. In equal unambiguous terms they were also empowered to change the location of schoolhouses and when done to "sell or dispose of the old site, and use the proceeds thereof towards procuring a new one." Immediately following that (and in equally uncertain terms) they were authorized, on condition that they could not agree with the owner, to condemn land for the same purpose and it was prescribed that the deed obtained in such condemnation proceedings should be

made to the trustees "and their successors," and when done "the title to said lot shall vest in said trustees and their successors in office." No clearer intention to acquire a fee-simple title through and by such proceedings could be expressed by the Legislature. But it is insisted in support of this defense that inasmuch as the 1888 statute directed proceedings to be conducted "as in case of condemning lands for the use of railroad and turnpike companies," and inasmuch as such companies do not acquire the absolute fee-simple title to the condemned land (Keown v. Brandon, 206 Ky. 93, 266 S. W. 889, and cases therein cited) the school trustees of district No. 36 of Jefferson county, acquired only the same defeasible rights to the lot in controversy because of the same common procedure adopted in each of the condemnation proceedings, but such conclusion is by no means sound.

The provisions of the statute for the condemnation of sites for schoolhouses did not require that the *title* obtained thereby should be the *same* as that obtained by railroad and turnpike companies under similar action, but only that the remedy for the condemnation of property for school purposes should be practiced by the same procedural rules prescribed in similar proceedings for such method of acquisition of land for railroad and turnpike purposes. The 1888 act by its terms prescribed for the acquisition of a fee-simple title by the trustees of common school districts, and, as if to emphasize that intention, it provided that such trustees might sell and dispose of the old site; which evidently could not be done unless a fee-simple title was held by them. There is no difference made in the statute with reference to authority to sell the schoolhouse lot between an acquired title by condemnation proceedings and one acquired by contract inter partes. Moreover, the deed prescribed by the act to be executed by the commissioner in such proceedings is required to contain the exact language universally employed to create in a corporation a fee-simple title.

In the case of Ritter v. County Board of Education of Edmonson County, 150 Ky. 849, 151 S. W. 5, and again on petition for rehearing in 151 Ky. 578, 152 S. W. 564, it was recognized that such an absolute title in the school trustees could be acquired by the condemnation proceedings provided for the purpose. It is our conclusion, therefore, that the defense embodied in ground (1) is untenable and cannot be sustained.

2. The defense embodied in ground (2) is likewise without merit. We have seen that it was the intention and purpose of the Legislature in enacting section 6 of the 1888 statute to vest the trustees of the school district under condemnation proceedings with the fee-simple title to the condemned land. This ground is bottomed upon the above-inserted language contained in the commissioner's deed ''for school purposes,'' which, it is insisted, had the effect to create at most only a defeasible fee in the trustees and provided for a reverter to the prior owners of the lot or their heirs when the property ceased to be used as a site for a schoolhouse. In the absence of a statute, we are convinced that no such right of reverter would be created by the use of such language when the acquired title was upon a valid and sufficient consideration. The precise question was before the Supreme Court of Pennsylvania in the case of Phillips Gas & Oil Co. v. Hillis Lingenfelter et al., 262 Pa. 500, 105 A. 888, and 5 A. L. R. 1495, except that the limiting language contained in the deed there involved was more positive towards the creation of the right of reverter than is that contained in the deed here involved, inasmuch as the words ''for school purposes'' was in that case followed by the word ''only'' so as to read ''for school purposes only.'' The court discussed a statute in Pennsylvania under which authority to acquire property by the trustees was given and which was somewhat similar to the statute here involved, and held that, notwithstanding that deed was an inter partes one, it was not the intention to create the right of reverter or to debase what was evidently intended to be an absolute fee, and in explaining the reason for the insertion of the words the court said:

''The words upon which the appellant relies as debasing the fee are merely superfluous and not expressive of any intention of the parties to the conveyance as to the effect to be given to it. The directors of the school district could not have purchased the lot for any other purposes than that named in the deed, and their acceptance of it with the insertion in it of the words 'for school purposes only,' was a needless admission by them that they were acting within the powers conferred upon them by the act of assembly. It was simply that, and nothing more, and the deed, in all other respects admittedly conveying an absolute estate, is not affected by them.''

In the case of McElroy v. Pope, 153 Ky. 108, 154 S. W. 903, 44 L. R. A. (N. S.) 1220, this court had before it the effect of similar language employed in the same character of deed to school property and held that the mere statement in the deed to the trustees of the purpose for which the land was acquired would not have the effect of creating a limitation on the fee in the absence of an express stipulation for a reverter in case the property should cease to be so used. The language there involved was "to be used as a common school ground," and it was contended that when the trustees abandoned such use the fee reverted to the grantor, but we held otherwise and fortified our holding with some prior opinions of this court in the cases of Carroll County Academy v. Gallatin Academy, 104 Ky. 621, 47 S. W. 617, 20 Ky. Law Rep. 824; Fuquay v. Hopkins, 58 S. W. 814, 22 Ky. Law Rep. 744, and Murphy v. Metz, 85 S. W. 1097, 27 Ky. Law Rep. 617. In the Fuquay case in construing similar language, and which it was insisted debased the otherwise conveyed absolute fee, we said that the language was employed, not with the intention of rendering the fee conditional, but were descriptive of the nature of the use for which the trustees had selected the land. There is an extended annotation to the McElroy opinion as published in the L. R. A. report, supra, in which it is stated:

"In general mere statements in the deed that the property is conveyed *for school purposes,* or is to remain for such purposes, and similar statements, are not construed as conditions or limitations of the grant." (Our emphasis.)

Many cases are cited in support of that statement, and in some of which stronger limiting language was employed than that involved in the instant case, and in which the court denied the conditional effect upon the absolute fee contended for. We have seen that the statute providing for the acquisition of the title of the trustees by condemnation proceedings made no difference as to the character or extent of estate obtained thereunder from the one obtained by an inter partes deed, and we are convinced that the involved language in the deed now before us did not have the effect contended for by defendant.

Independently, however, of the cited authorities, we are thoroughly convinced that the commissioner who executed the deed had no authority to limit the fee obtained

by the condemnation proceedings by the insertion of the involved language, even if it had been his intention to so limit it, and which is because he had no authority to convey any less title than the condemnation proceedings provided for. Full and complete consideration was paid thereunder, and it is the universal rule that the right of reverter does not arise in such cases except from the clearest and most explicit language. See annotations and other authorities, supra.

Other questions are discussed in brief of counsel for defendant, including (a) the contention that the Standiford heirs should have been parties to this litigation, and (b) that the commissioner did not properly acknowledge the deed, and, perhaps, others of even less merit. But we do not regard any of them as possessing sufficient materiality to require our consideration.

For the reasons stated, the judgment is affirmed.