ALTA VALENTINE, PLAINTIFF-APPELLANT, v. LESTER LAMONT AND MARION LAMONT, HIS WIFE, DEFENDANTS AND THIRD-PARTY PLAINTIFFS-RESPONDENTS, v. BOARD OF EDUCATION OF THE CITY OF JERSEY CITY, HUDSON COUNTY, A BODY CORPORATE, THIRD-PARTY DEFENDANTS-RESPONDENTS, v. ANTHONY J. LAMONT, INTERVENOR-RESPONDENT.

Argued October 19, 1953—Decided November 23, 1953.

*Mr. Louis G. Morten* argued the cause for the plaintiff-appellant.

*Mr. Theodore Rabinowitz* appeared for the defendants and third-party plaintiffs-respondents.

*Mr. Robert H. Doherty* appeared for the third-party defendants-respondents.

*Mr. Edmund S. Johnson* appeared for the intervenor-respondent.

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal from a judgment of the Appellate Division which affirmed a judgment of the Superior Court, Law Division, which in turn had dismissed the appellant's complaint in ejectment and determined that the interveners-respondents held a fee simple absolute title to the premises in question by a deed of conveyance to them, dated April 19, 1946, from the respondent, the Board of Education of Jersey City, Hudson County, a body corporate.

The action was instituted to test the validity of the sale of such premises by the board of education to the interveners-respondents which property the board had acquired by condemnation in 1922. The theory of the action in ejectment was that a right of reverter remained vested in the appellant because the Constitution (1844) and the applicable statutes merely permitted the taking of a fee simple determinable by eminent domain and not a fee simple absolute.

In 1922 the respondent board exercised its right of eminent domain, pursuant to *L.* 1903 (*2nd Sp. Sess.*), *c.* 1, *sec. 49*, as amended by *L.* 1922, *c.* 226, *sec.* 1 (now *R. S.* 18:6–16, 18:6–24), and in conformity with the Eminent Domain Act, Revision of 1900 (now *R. S.* 20:1–1 *et seq.*), to acquire the said property from the appellant's predecessor in title. Condemnation commissioners were appointed who fixed the fair market value of the entire property at $13,600. From this award no appeal was taken.

The board took title to the property and for 24 years the title and right of possession of the board was never disputed by the appellant or her predecessor in title, nor was any claim made that the board had acquired no greater estate than an easement or fee simple determinable, or that a dominant estate was held by the appellant and her predecessors in title and only a servient estate held by the respondent board of education. This despite the fact that the property was not used for school purposes but was occupied by monthly tenants, that the board received the monthly rentals, paid the real estate and water taxes on the properties and

assumed complete control and dominion of the properties as sole owner thereof.

In September 1945 the board adopted two resolutions pursuant to *R. S.* 18:5–24, 25 and 26 that (1) the property was no longer needed for school purposes and that (2) it be sold pursuant to statute at public auction. A minimum sales price of $5,900 was fixed and the property was purchased by the defendant-respondent Lester Lamont. The intervener-respondent Anthony Lamont is the present holder of a mortgage of $4,000 on the property as security for the advancement of such sum to Lester Lamont and his wife at the time of the sale.

The appellant concedes the good faith of the board in acquiring the property for school purposes but challenges the right of the board to convey a fee simple absolute and instituted its action in ejectment.

Both the trial court and the Appellate Division in carefully reasoned opinions, 20 *N. J. Super.* 454 (1952), and 25 *N. J. Super.* 342 (1953), rejected the appellant's contentions as to the lack of legislative power and held that the fair market value of a fee simple absolute was the basis of the award made in the condemnation proceeding in 1922 and that a reasonable construction of the applicable statutes (now *R. S.* 18:6–16, 18:6–24 and 18:5–25, which are set forth at length in opinions below) clearly indicate a legislative intention to empower the board of education to take a fee simple absolute in property acquired for school purposes by eminent domain, *R. S.* 20:1–1 *et seq.* The appeal was taken to this court under *Rule* 1:2–1(*a*), now *R. R.* 1:2–1(*a*), on the ground that the Legislature was never vested with power, under the Constitution (1844), *Art.* I, *par.* 16, to enact laws to permit the acquisition of a fee simple absolute title by eminent domain.

The argument of the appellant presents the following questions:

1. Under the Constitution of the State of New Jersey (1844, as amended), *Art.* I, *pars.* 1 and 16, can the Legislature enact statutes whereby a board of education, having been granted the

right to exercise the power of eminent domain, take and condemn private land for a public use and acquire a title thereto in fee simple absolute?

2. Under *R. S.* 18:6–24 can a board of education take and condemn land and other property for school purposes, under the statutes in force in July 1922, paying compensation as provided by law, and acquire a title thereto in fee simple absolute which it can thereafter convey to private persons for private uses by virtue of *R. S.* 18:5–25, adopted in the year 1929?

3. If land and other property are taken and condemned as stated in question 1 but subsequently in 1946 the public use for which said land and other property were so taken and condemned, namely school purposes, is abandoned, and the board declares they are no longer needed for such use and executes and delivers a deed, reciting that it conveys said lands and other property to private individuals for private use, do said land and other property revert to such person as was the owner thereof at the time of such taking and condemnation, or, if such owner be deceased, to such persons as succeeded to such title upon the death of such owner?

 Our answer to the first two questions is in the affirmative and in the negative as to the third question.

 The right of eminent domain is of very ancient origin, 2 *Kent, Commentaries* (*14th ed.*) *p.* *339, is inherent in all governments and requires no constitutional provision to give it force. It is an inherent and a necessary right of the sovereignty of the state. *National Docks R. R. Co. v. Central R. R. Co.,* 32 *N. J. Eq.* 755, *p.* 763 (*E. & A.* 1880); 2 *Kent, Commentaries supra;* 2 *Cooley, Constitutional Limitations* (*8th ed.*), p. 1110; *Lewis, Eminent Domain* (*3rd ed.*), *p.* 7.

 It is generally spoken of in reference to those cases in which the government seeks to appropriate property against the will of the owner and is said to be that superior right of property pertaining to the sovereignty by which private property acquired by its citizens under its protection may be taken and its use controlled for the public benefit without regard to the wishes of its owners. More accurately, it is the rightful authority which exists in every sovereignty to control rights of a public nature which pertain to its citizens in common and to appropriate and control property for the public benefit as the public safety, necessity, convenience, or welfare may demand. 2 *Cooley, Constitutional*

*Limitations, supra, p.* 1110; *Ryan v. Housing Authority of Newark,* 125 *N. J. L.* 336, 340 (*Sup. Ct.* 1940); *Bergen County Sewer Authority v. Little Ferry,* 5 *N. J.* 548, 552 (1950). It is the highest and most exact form of property, notwithstanding the grants to individuals, which remains in the government or in the aggregate body of the people in their sovereign capacity; and they have the right to assume possession of the property in the manner directed by the Constitution and the laws of the State, whenever the public interest requires. *Beekman v. Saratoga & Schenectady R. R.,* 3 *Paige N. Y.,* 45, at *page* 73, 22 *Am. Dec., p.* 679.

[6; 7] In theory it exists in absolute form in the ultimate source of authority in every organized society. *National Docks R. R. Co. v. Central R. R. Co., supra, p.* 763. However, even at the point of its ancient origin and ever since it has always been subject to the equitable principle that property cannot be taken for public use without just compensation. 2 *Kent, Commentaries, supra, p.* *339; *Attorney-General v. Stevens,* 1 *N. J. Eq.* 369 (*Ch.* 1831); *Scudder v. Trenton Delaware Falls Co.,* 1 *N. J. Eq.* 694 (*Ch.* 1832). Further, the taking of the right, title, and interest of the owner should not be greater than necessary to effectuate the public use which called the power of eminent domain into play. The power lies dormant until called into play by the Legislature under our form of government. 2 *Cooley, Constitutional Limitations, supra, p.* 1119 *et seq.; Coster v. Tide Water Co.,* 18 *N. J. Eq.* 54 (*Ch.* 1866), affirmed 18 *N. J. Eq.* 518 (*E. & A.* 1866).

The Constitution (1776) contained no reference to the power of eminent domain which was subjected to the above equitable limitations of the common law. The Constitution (1844) which is here applicable, in *Art. I, par.* 16 stated:

"Private property shall not be taken for public use, without just compensation; but land may be taken for public highways, as heretofore, until the legislature shall direct compensation to be made."

Prior to the adoption of this provision lands were taken for highway purposes without compensation. This power

was claimed and enforced, both by the right of eminent domain and reliance on the reservations as to a percentage of the lands for such purposes in the grants of the Proprietors of East and West Jersey. *State v. Potts,* 4 *N. J. L.* \*347 (*Sup. Ct.* 1817) ; *Hudson County Land, etc., Co. v. Seymour,* 35 *N. J. L.* 47 (*Sup. Ct.* 1871) ; *Nichols Eminent Domain, sec.* 1:22(4), 8.1.

It has always been the law of this State, both at the common law and under the eminent domain statute, that the land of the abutting owner was merely charged with the easement of public travel and the necessary incidents thereof and the fee to the land to the middle of the road remained in the abutting owner. *Saco v. Hall,* 1 *N. J.* 377 (1949), and the cases cited therein. So it has been held under statute when the State took the land for highway purposes, that it acquired an easement for public travel only, for it was manifest that the purpose of the grant to the State was not to give the capacity or invest it with the power to take the fee, but to take only so much of the title as was essential to establish the use of public travel thereover. *New Jersey Zinc & Iron Co. v. Morris Canal, etc., Co.,* 44 *N. J. Eq.* 398, 404 (*Ch.* 1888) ; *Frelinghuysen v. State Highway Comm.,* 107 *N. J. L.* 218 (*Sup. Ct.* 1930), affirmed 108 *N. J. L.* 403 (*E. & A.* 1931). Contrawise, it has been held that the operation of a public market in a public street imposed a servitude over and above the easement of public travel acquired by eminent domain. *State v. Laverack,* 34 *N. J. L.* 201 (*Sup. Ct.* 1870). See relocation of a sewage disposal plant in a public street. *Faulks v. Allenhurst,* 115 *N. J. L.* 456 (*E. & A.* 1935) ; 120 *N. J. L.* 486 (*Sup. Ct.* 1938) ; 122 *N. J. L.* 225 (*Sup. Ct.* 1939) ; re telephone lines *cf. Nicoll v. New York & New Jersey Telephone Co.,* 62 *N. J. L.* 733 (*E. & A.* 1899), and *Holcombe v. Western Union Telegraph Co.,* 109 *N. J. L.* 551 (*E. & A.* 1932).

These cases merely establish the proposition that all that was needed for the purpose of public travel on a highway under the statutes, the common law and the facts and circumstances existing at the time of decisions, was an ease-

ment to travel over the land of the abutting owner. They do not establish the proposition that there is a lack of power to take a fee simple absolute by eminent domain where such title is necessary to accomplish the underlying public purpose. It is to be observed parenthetically that there is no occasion to discuss *Art. IV, Sec. VI, par. 3, Constitution* (1947), and its provision relative to the taking of a fee simple absolute, since it is not applicable in point of time to this cause.

As to the taking of a fee simple estate by eminent domain, such a taking was involved by the charter in *Coster v. New Jersey R. R. & Trans. Co.*, 23 N. J. L. 227 (*Sup. Ct.* 1852); by statute as to military reservations in *Morris v. Comptroller*, 54 N. J. L. 268 (*Sup. Ct.* 1892); by statute for a public market, *Bentley v. City of Newark*, 108 N. J. L. 317 (*Sup. Ct.* 1931); *Carroll v. City of Newark*, 108 N. J. L. 323 (*E. & A.* 1932). See also *Romano v. Housing Authority, Newark*, 123 N. J. L. 428 (*Sup. Ct.* 1939); *Ryan v. Housing Authority, Newark*, 125 N. J. L. 336 (*Sup. Ct.* 1940); *cf. In re Housing, Newark*, 126 N. J. L. 60, 65 (*E. & A.* 1940).

In all these cases the charter or statute apparently authorized the taking of a fee simple title, and it is well established that where the public use so requires the Legislature may authorize the taking of a fee or any less estate. *United States Pipe Line Co. v. D. L. & W. R. R. Co.*, 62 N. J. L. 254, 266 (*E. & A.* 1898); *Currie v. N. Y. Transit, etc. Co.*, 66 N. J. Eq. 313, 316 (*E. & A.* 1904); *Frelinghuysen v. State Highway Comm., supra*.

██ Where a statute authorizes the taking of a fee, it cannot be held invalid on the ground that a lesser interest only was required to accomplish the purpose the Legislature had in view. This is a legislative and not a judicial question. *United States Pipe Line Co. v. D. L. & W. R. R. Co., supra, p.* 266. Further, as Chief Justice Beasley pointed out, there is no reason why the language as it stands in the statute is to be interpreted differently from what it would if it were found in a deed from a landowner to the board of education.

The test is in the legislative intent, with full consideration of the public purposes for which the land in question is being acquired. Where, as here, the land is being acquired for the purposes of schools it is extraordinarily difficult to see how anything less than a fee simple absolute title was intended by the statute. The condemnation for this use involved exclusive possession and an exclusive right of possession that might have lasted forever, and the payment in the statutory manner of the full market value of the property, which figure was based on the full right, title and interest of the owner, carries with it a presumption of the full payment for the estate in fee. .The owner was entitled to no less than full compensation and was justly compensated, and it would be, as Mr. Justice Case pointed out in *Carroll v. City of Newark, supra, p.* 331,

"an exaggeration of the essence of private ownership and a mulcting of the pubilc purse to hold that when an individual has had his lands taken for public use and has been fully paid for those lands he, or his heirs after him, should be entitled to payment anew whenever the character of the public use changes, simply because it does change."

On the other hand, it would be highly inequitable to merely compensate an owner where we have such a taking as we have here on the basis of a fee simple determinable title which necessarily would be on a monetary value considerably less than he would be entitled to receive for a fee simple absolute title. For he would normally be deprived of the dominion and control over his right, title and interest in the property, not only during his own lifetime but that of any of his heirs, subject only to the theoretical contingency that at some future indefinite time the public use might be abandoned and he have a right of reverter in the property. Such a result, in the absence of clear and express language in the statute that only a fee simple determinable title was to be taken, would make a fraud of the constitutional guaranty that private property shall not be taken for public use without just compensation.

The fact that Mr. Justice Case in *Carroll v. City of Newark, supra,* found it unnecessary to determine whether the statute there involved permitted the taking of a fee simple absolute or a fee simple determinable, creates no real misgiving as to the power to take a fee simple title absolute by eminent domain. In that case the question did not arise because there was simply a change in the nature of the public use and not an abandonment. But the fact that there has been an abandonment in this case does not change the situation.

As was pointed out in both the lower court opinions, the board of education is a body corporate. By *R. S.* 18:5–25 every board of education may sell or dispose of any lands or buildings or any right or interest therein which ceases to be suitable or convenient for the use for which they were acquired or are no longer needed for school purposes, without regard to whether the property was acquired by purchase or "through condemnation proceedings * * * for school purposes." The money so received under the law can be devoted only to school purposes, and this being so the mere fact that the property has been converted from real property to money representing its true value does not change the purpose for which it was originally acquired through condemnation proceedings.

We have no hesitancy in holding that under the statutes in this case made and provided the Legislature intended that a fee simple absolute title should be taken by eminent domain for school purposes; that the power to take is found in the broad scope of eminent domain inherent in the ultimate source of authority in every organized society, which is exercised through proper legislative enactment, subject to the constitutional limitations above set forth.

This is the prevailing view throughout the country. See 11 *McQuillin Municipal Corporations* (3rd ed.) 1950, sec. 32.108; *City of Newton v. Perry,* 163 *Mass.* 319, 39 *N. E.* 1032 (*Sup. Jud. Ct.* 1895); *Brooklyn Park. Com'rs v. Armstrong,* 45 *N. Y.* 234, 6 *Am. Rep.* 70 (*Ct. App.* 1871), cited with approval in many cases in this state; *Binder v. County*

*Board of Education*, 224 *Ky.* 143, 5 *S. W. 2d* 903 (*Ct. App.* 1928); 2 *Cooley, Constitutional Limitations, supra, p.* 1147; 3 *Nichols, Eminent Domain* (*3rd ed.*) 1950, *sec.* 11.209, 79 *A. L. R.* 516.

Since the statement in *Summerill v. Hunt*, 25 *N. J. Misc.* 498, 504 (*Sup. Ct.* 1947), that "It appears to be the settled law that a fee simple absolute cannot be acquired by condemnation," is contrary to the conclusions here reached, this statement which was *obiter dicta* in that case is expressly overruled.

 As was held below, the board of education in this case took a fee simple absolute title in the premises in question and acted in conformance with the statutory requirements for the sale of property no longer needed for public school purposes, and was authorized by the said statutes to convey a fee simple absolute title on the completion of the sale held pursuant to the statutes.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*Opposed*—None.