Ruth B. CRADDOCK, Appellant,

v.

UNIVERSITY OF LOUISVILLE et al.,
Appellees.

Court of Appeals of Kentucky.

June 21, 1957.

James H. Frazee, Louisville, for appellant.

Brown, Eldred & Tachau, Louisville, for appellees.

S. Russell Smith, Allen P. Dodd, Jr., Val A. House, Jr., Louisville, amici curiae.

MILLIKEN, Chief Justice.

This is an appeal from a judgment upholding the power of the University of Louisville to condemn land under the provisions of KRS 165.070 in the manner provided in KRS 416.120 for the purpose of causing a hospital to be built thereon to be used as a "teaching" hospital in connection with the University's School of Medicine. The University filed separate condemnation actions against several landowners, and the appeal in the present action is intended to be a test to determine the principal legal problems presented in the various separate actions.

In the present action the appellant, Mrs. Craddock, has agreed to sell her property to the University for $6,200 if it is decided that the University has the power to condemn it, an agreement which other landowners against whom condemnation actions have been instituted insist renders the present action academic, moot, and not determinative of the rights of anyone. We take the view that the determination of the legal power of the University is the real issue, that the agreement as to a sales price for the property does not vitiate the fact that Mrs. Craddock does not intend to sell the property unless the University has the power to obtain it anyway by the exercise of its alleged power of eminent domain, and we do not believe it to be within our province to give serious consideration to the possibility or even probability that Mrs. Craddock's agreement with the University as to a sales price for her property may depreciate the market value of other land sought to be condemned.

The additional land is sought by the University for the prime purpose of providing a suitable site in downtown Louisville for the construction of the proposed Methodist-Evangelical Hospital in an area denominated the Louisville Medical Center. Under the terms of agreements between the University and the Hospital, the University and Hospital will jointly acquire a site for the Hospital with funds contributed in part by the University and in part by the Hospital. Title to the site is to be taken in the name of the University, which, after acquisition, will lease it on a long-term basis to the Hospital at a nominal rent, the Hospital agreeing to construct a large, modern, well-equipped hospital building thereon, at its own expense, which will be operated as a teaching hospital in connection with the University's School of Medicine.

It is alleged that the agreements between the University and Hospital are a subterfuge for the purpose of allowing the Hospital to invoke the University's power of eminent domain (if it has it) and to thus avoid dealing with adjacent landowners on a free market basis. This contention imputes bad faith where none appears to be. As the record so clearly indicates, the gist of the plan used here is not new, is not original, but has been used in other places in the country, including Pennsylvania Hospital founded by Benjamin Franklin in 1751 and affiliated with the University of Pennsylvania School of Medicine.

The basic questions raised are whether the General Assembly has the constitutional power to grant the power of eminent domain to a municipal university; whether the University of Louisville is a municipal university within the meaning of KRS 165.020; whether there is a practical necessity for the University to condemn land in the present circumstances, and whether its acquisition will extend the usefulness of the University within the meaning of KRS 165.070; and whether the University will acquire a fee simple title by condemnation

or a mere right to use the acquired land solely for University purposes.

The learned trial judge, Hon. Lawrence S. Grauman, has answered these basic questions in an exhaustive opinion which we will quote in part here as determinative of most of the issues raised. In his opinion he states:

"The Legislature has recognized the University to be a municipal university because, in KRS 165.070, it is stated:

" 'The board of trustees of a municipal university in a city of the first class may * * *.'

"There is no other university in Louisville, the city of the first class in the State, which could possibly be denominated 'a municipal university.' There is, in fact, no other university in the City of Louisville besides the University of Louisville, although there are other colleges. None of the other colleges could possibly be classed as a component part of 'a municipal university.' * * * Therefore, the University performs a very important public purpose. Consequently the Legislature, having a vital interest in seeing that adequate educational facilities are available for the general public, exercised a constitutional right to delegate to the University the right of eminent domain.

"The Legislature took cognizance of the fact that the University would require supplemental funds in addition to what was raised by municipal taxation. KRS 165.010. In view of the various statutes which the Legislature has enacted under which the University is recognized as a municipal university, I would be loath to hold that there is even a debatable question as to whether or not the University is a municipal university.

"The Legislature has the inherent right to delegate the power of eminent domain where, in exercising power, the delegatee is accomplishing something in the nature of a public purpose. * * * The power is used to serve the public good and the common welfare. The case of Cornwell, v. Central Ky. Natural Gas Co., Ky., 249 S.W.2d 531, refers to the various public utilities which have received the power of eminent domain through the legislative act of the sovereignty. As contended by the University, there has been great elasticity with reference to the definition of 'public purpose.' An apt statement with reference to the Legislature's having the constitutional right to delegate the power of eminent domain to a corporation which will exercise it in furtherance and aid of a public purpose is found in Bell's Committee v. Board of Education, 192 Ky. 700, 234 S.W. 311. Where private corporations perform duties which are of a public nature, it is not only expedient for such corporations to have the power of eminent domain, it is absolutely necessary for the public welfare and the good of the community. I do not believe that the action of the Legislature in delegating the power of eminent domain to the University violates Sections 13 or 242 of the Kentucky Constitution or any other section of the Kentucky or Federal Constitutions. No sound person would question the right of a board of education to condemn property for school purposes. It is constantly being done all over the State by the State acting through one of its arms, a board of education. * * * To deny the University the power of eminent domain in the case at bar would be to give a strained construction to the statute and one which certainly was not contemplated by the Legislature. * * * See Russell v. Trustees of Purdue University, 201 Ind. 367, 168 N.E. 529, 65 A.L.R. 1384. * * *

"The Medical School of the University being at present the only

medical school in the Commonwealth offering the degree of Doctor of Medicine is not only serving the public welfare of the City of Louisville but the entire Commonwealth of Kentucky. The sovereign, the Commonwealth, has a vital interest in the functions of the University. It is common knowledge that many smaller counties in Kentucky are in need of physicians. * * The University is sound in its contention that the taking of the property of the defendant is for the purpose of expanding the teaching and training facilities of the Medical School. Without in-hospital training of medical students, no school of medicine could properly perform its public purpose. * * *

"Under the agreement between the University and the Methodist Hospital, the public will be served and, certainly, the facilities which will be available will expedite progress being made at the Medical School in the scientific field. The land on which the Methodist Hospital will be located will be employed for 'public use,' as well as 'public benefit.'

"As, unquestionably, the University will own the fee in the property on which the hospital will be constructed by Methodist-Evangelical Hospital, Inc., for practical purposes the University will own the physical improvements which constitute the hospital. Such improvements will be attached to the land and cannot be removed. While Methodist Hospital will, under the terms of the lease to be entered into, establish the policy for the use and control of the hospital, the Methodist Hospital is required to allow the University to carry out its program, and the hospital is to be operated as a teaching hospital in connection with the University's Medical School.

■ "The Legislature has the constitutional right to vest in a corporation or body serving the public good the right to exercise a discretion as to the selection of the location of land and property needed in furtherance of the plan to facilitate the serving of the public good. In other words, when, in good faith, a body possessing the power of eminent domain exercises its discretion as to the selection of property to be used for the public good, such discretion cannot be reviewed by the courts. Many qualified people differ in their views as to where a modern highway should be located and constructed. Instead of there being two schools of thought with reference to this matter, there are many schools of thought. However, the Department of Highways of the Commonwealth has the sole and absolute right to exercise its discretion as to where the new state highway is to be located. When it exercises such discretion in good faith, no one has the legal right to question the exercise of discretion by the Highway Department. The law gives the sole right to the agency possessing the power of eminent domain to determine where the project serving the public shall be located. Under the case of Binder v. County Board of Education for Jefferson County, 224 Ky. 143, 5 S.W.2d 903, I am of the opinion that in the instant case the University will acquire a fee simple title and not merely the right to use the property for a specified purpose, with the property reverting to the defendant at any time the University ceases to use the property for the public purposes specified in the stipulation filed herein. * * *"

■ We do not ignore the fact pointed out in briefs that clergymen of the Methodist faith and other classes of persons have preferred status in access to the facilities of the proposed hospital, but find that these

little twills of creedal purpose are merely human approaches to the divine design of service to all mankind, and hence not unconstitutional.

The judgment is affirmed.