384 F.2d 504
 Cyrus HIGGINSON, On Behalf of Himself and All Other Former Landowners, or Heirs, Successors, and Assigns Thereof, of Thirty Six Thousand Acres, Namely Camp Breckenridge, in Union, Henderson, and Webster Counties, Kentucky, Plaintiff-Appellant,
v.
The UNITED STATES of America, Defendant-Appellee.
 No. 16926.
 United States Court of Appeals Sixth Circuit.
 September 28, 1967.
 
 Melvin M. Belli, San Francisco, Cal., for appellant, Belli, Asche, Gerry & Allison, San Francisco, Cal., Jerry W. Nall, Nall & Stephens, Owensboro, Ky., T. D. Emberton, Edmonton, Ky., John Y. Brown, Brown, Sledd & McCann, Lexington, Ky., on the brief.
 A. Donald Mileur, Dept. of Justice, Washington, D. C., for appellee, Edwin L. Weisl, Jr., Asst. Atty. Gen., S. Billingsley Hill, Atty., Dept. of Justice, Washington, D. C., Ernest W. Rivers, U. S. Atty., Louisville, Ky., on the brief.
 Before EDWARDS, CELEBREZZE and PECK, Circuit Judges.
 PER CURIAM.
 
 
 1
 During and immediately after World War II the government established a United States Army Garrison at Morganfield, Kentucky, known as Camp Breckenridge. For this purpose it assembled some 36-thousand acres of land through eminent domain proceedings in the United States District Court for the Western District of Kentucky, Owensboro Division. In the condemnation actions Declarations of Taking were filed by Henry L. Stinson, Secretary of War of the United States, in which it was stated that "the said lands are necessary adequately to provide for the establishment of a triangular division camp," and that, "the estate taken for said public uses is the full fee simple title thereto, subject, however, to existing easement for public utilities, for railroads and pipelines."
 
 
 2
 Following World War II, Camp Breckenridge was placed in inactive status and has so remained since 1953. Plaintiff-appellant, on behalf of himself and all other former owners, or heirs, successors or assigns thereof, of the land involved brought this action to require a reconveyance of the property and to recover damages.
 
 
 3
 Following a period of considerable procedural history, the District Court ultimately entered an order sustaining a motion by the defendant-appellee (hereinafter usually referred to as the "government") to dismiss the action, and this appeal resulted. In addition to those hereinabove set forth, the following facts (which must for present purposes be taken as true) are alleged in the third amended complaint.*
 
 
 4
 Plaintiff thus establishes that the 36,000 acres of land which he and those on whose behalf the action was instituted formerly owned was acquired by the government in the eminent domain proceedings for approximately $3,600,000. After the cessation of use of Camp Breckenridge for military purposes the government offered the mineral rights of the subject property for sale. Offers to purchase those rights were received in an amount exceeding $32,000,000, from which "it is evident that the United States by the selling of the mineral rights in said property will realize a profit of approximately Thirty Million Dollars ($30,000,000.00)." That statement appears in the Amended Complaint, the prayer of which seeks, inter alia, liquidated damages in the amount of $64,000,000. It is the plaintiff-appellant's contention that at the time of their conveyance of their properties, and as a part of the consideration therefor, the then owners were informed by government agents and employees that they would have the right and opportunity to repurchase their lands, since the government was acquiring the property solely for the purpose of constructing and maintaining "a temporary camp for military purposes during the period of national emergency." The government having occupied the property only for the purpose of such a temporary camp, plaintiff contends generally that acquisition of rights greater than were necessary for that limited purpose constituted a taking of the property without due process of law and without payment of just compensation, in violation of the Fifth and Fourteenth Amendments to the Constitution. He complains that they were denied the right to prove the value of the mineral rights at the time of the condemnation proceedings, and specifically claims that the government's acquirement of those rights constituted a taking without payment.
 
 
 5
 The first count of the complaint in its final form prays that the government be directed to sell the subject property to plaintiffs in accordance with the terms of section 23(d) of the Surplus Property Act of 1944 (58 Stat. 777). However, that statute was repealed by section 502 of the Federal Property and Administrative Services Act of 1949 (63 Stat. 399), 13 years before Camp Breckenridge was declared surplus and 16 years prior to commencement of this action. Obviously no right could accrue to plaintiff thereunder. The prayer of the second count is for judgment under 28 U.S.C. § 1346(a) (2) (1964) in the sum of $9,300 as "reasonable rental" for the property for the period of occupancy by the government for the period subsequent to the cessation of its use thereof for the purpose of the taking, i. e., military purposes.
 
 
 6
 Appellant asserts that Kentucky law should govern the title acquired by the United States government and that under Kentucky law, since the government did not need fee simple title, it should be held to have acquired this site subject to reversionary rights in the former owners when it became surplus.
 
 
 7
 The first problem with appellant's argument is that we believe that the nature of title taken by federal condemnation under a federal condemnation statute is subject to determination by federal law unless Congress states otherwise. United States v. 93,970 Acres, 360 U.S. 328, 332-333 & n. 7, 79 S.Ct. 1193, 3 L.Ed.2d 1275 (1959); United States v. Miller, 317 U.S. 369, 379-380, 63 S.Ct. 276, 87 L.Ed. 336 (1943); United States v. Certain Interests, 271 F.2d 379, 384 (7th Cir. 1959).
 
 
 8
 The government's title to the land acquired by negotiated purchases vested some 20-30 years ago. This title cannot now be disputed under any accepted property theory. See Beistline v. City of San Diego, 256 F.2d 421 (9th Cir.), cert. denied, 358 U.S. 865, 79 S. Ct. 96, 3 L.Ed.2d 98 (1958).
 
 
 9
 The government obtained the bulk of the land comprising Camp Breckenridge by condemnation under the authority of 50 U.S.C. § 171. As part of the condemnation proceedings Declarations of Taking were filed pursuant to 40 U.S.C. § 258a. This statute provides in part:
 
 
 10
 "Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein * * *."
 
 
 11
 In light of the language of § 258a, if anything less than a fee simple absolute is taken, the lesser title or exceptions to fee title must be designated in the declaration. Burkhart v. United States, 227 F.2d 659, 661-662 & n. 2 (9th Cir. 1955). In the instant case the declarations provided that "The estate taken for said public uses is in full fee simple title, subject however to existing easements for public utilities, for public railroads, and for pipelines." Thus, if valid title passed to the United States, it received full fee title except for the specified easements.
 
 
 12
 Title to land obtained by condemnation vests upon the filing of the declaration of taking. 40 U.S.C. § 258a, supra. This title, however, is subject to a right of the former land owner to challenge the taking as not being for the prescribed statutory purpose. Catlin v. United States, 324 U.S. 229, 240-243, 65 S.Ct. 631, 89 L.Ed. 911 (1944). This problem is not in issue in the instant case because Camp Breckenridge was erected in accordance with the prescribed military purpose. Consequently, valid title passed to the United States when the declaration of taking was filed.
 
 
 13
 The subsequent abandonment of Camp Breckenridge did not affect the validity of the government's title to the land acquired by condemnation. A subsequent abandonment of the original purpose for which land was acquired does not affect the validity of the condemnation. The validity of title is determined by the conditions existing at the time of the taking. Also, title to property which is vested in the United States government cannot be returned to the original land owners without Congressional authorization. United States v. Three Parcels of Land, 224 F.Supp. 873 (D.Alaska 1963); United States v. 10.47 Acres of Land, 218 F.Supp. 730 (D.N.H.1962).
 
 
 14
 If we were to assume that Kentucky law applied in the instant case, it would still appear that fee simple title was obtained by the United States government. The circumstances surrounding the condemnation transactions indicated an intention and purpose to transfer a fee simple title, subject only to certain specified easements. First, the declaration of taking clearly provided for fee simple title. Second, many years passed after Camp Breckenridge was abandoned as a military base without a claim against the government's title. Such claims were initiated only after oil was found on the property. Finally, under Kentucky law, the particular statute authorizing the condemnation is important in determining the title acquired. Craddock v. U. of Louisville, Ky., 303 S.W.2d 548 (1957); Kentucky Elec. v. Wells, 256 Ky. 203, 75 S.W.2d 1088 (1934); Binder v. County Board, 224 Ky. 143, 5 S.W.2d 903 (1928). The applicable federal statutes authorized a fee simple taking in the instant case. 50 U.S.C. § 171 provides:
 
 
 15
 "The Secretary of the Army may cause proceedings to be instituted in the name of the United States, in any court having jurisdiction of such proceedings for the acquirement by condemnation of any land, temporary use thereof or other interest therein, or right pertaining thereto, needed for the site, location, construction, or prosecution of works for fortifications, coast defenses, military training camps, and for the construction and operation of plants for the production of nitrate and other compounds and the manufacture of explosives and other munitions of war and for the development and transmission of power for the operations of such plants; such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted: Provided, That when the owner of such land, interest, or rights pertaining thereto shall fix a price for the same, which in the opinion of the Secretary of the Army shall be reasonable, he may purchase or enter into a contract for the use of the same at such price without further delay. * * * "
 
 
 16
 This language is certainly broad enough to permit a taking in fee simple. Furthermore, § 258a of 40 U.S.C., supra, an ancillary statute which was used to implement § 171, specifically provides for a taking in fee simple. Our conclusion that the government acquired the fee makes it unnecessary, of course, to consider plaintiff's claim for "reasonable rental" for occupancy subsequent to the use for military purposes.
 
 
 17
 We will not deal at length with appellee's added contention that the claim of appeal in this case was defective. The mistake was such as could have been made by a clerk or stenographer. Appellee concedes that the error affected no substantial rights. It misled no one. We believe that good authority supports a liberal interpretation of Federal Rule 73(b). Fed.R.Civ.P. 61; see also 28 U.S.C. § 2111 (1964); Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Moore, Federal Practice ¶ 73.14 at 3,216-22 (1966).
 
 
 18
 Affirmed.
 
 
 
 Notes:
 
 
 *
 A determination of the factual allegations is rendered difficult by reason of the fact that the Third Amended Complaint is not an entire document within its four corners. It contains a statement adopting "all allegations contained in the original and prior amended complaints, to the same extent as set forth herein, which are not inconsistent with the allegations contained herein, * * *" Thus in order to determine what facts were before the District Court it is necessary to not only study the complaint in its four forms but also to determine which allegations are voided by subsequent assertions. Further complications are encountered by reason of the additional incorporation by reference of extensive Exhibits to the Complaint, Second Amended Complaint and Third Amended Complaint
 
 
 
 19
 JOHN W. PECK, Circuit Judge (concurring).
 
 
 20
 I am in entire accord with everything that is contained in the per curiam opinion with the exception of its concluding paragraph. I do not feel that a concession by one party can vest this court with the jurisdiction to hear an appeal any more than parties to an action can by stipulation and waiver create a case for District Court determination where jurisdictional prerequisites are lacking. Thus while joining in the conclusion that plaintiff-appellant's case would fail on the merits for the reason that the government acquired fee simple title to the subject property, I express the view that that issue is not before the court on this record.
 
 
 21
 During the early days of this case a rather complex and protracted series of pretrial procedures and submission of motions resulted in the filing of an amended complaint and of a second amended complaint prior to August 3, 1965. On that date, after reciting the hearing on and consideration of the Government's motion to dismiss the action, the District Court entered an order providing as follows:
 
 
 22
 "IT IS ORDERED that the Government's motion to dismiss is sustained, and the United States Attorney shall tender Findings of Fact and Conclusions of Law in support of this order of dismissal and in conformance with the oral opinion of the Court."
 
 
 23
 On August 12, 1965, plaintiff filed his motion for leave to file a third amended complaint and on August 12 he filed a motion for new trial obviously directed to the August 3rd entry of dismissal, although it is erroneously referred to in the order as having been entered "on the 2nd day of August, 1965." On September 9, 1965, the District Court entered its further order wherein it is stated:
 
 
 24
 "IT IS HEREBY ORDERED that the Third Amended Complaint that was tendered by the plaintiff is filed as of July 30, 1965, and that the defendant's Motion to Dismiss is filed as of July 30, 1965. The plaintiffs' Motion for New Trial is hereby overruled.
 
 
 25
 "The Order of this Court on August 2, 1965, insofar as it directed the United States Attorney to tender findings of fact and conclusions of law, is set aside and Findings of Fact and Conclusions of Law are not required to be tendered to the Court since matters outside the pleadings were not considered by the Court." On the 6th day of October, 1965, plaintiff-appellant filed his notice of appeal, wherein the two orders above quoted (and no others) are set forth exactly as they here appear. That the Notice of Appeal applies only and exclusively to these two orders cannot be questioned, and had no further action been taken by the District Court no doubt would exist as to the necessity of dismissing the appeal on jurisdictional grounds. This is true because the August 3rd order is on its face and in the circumstances of an interlocutory nature and therefore not appealable. Even if this were not true, the filing of the motion for a new trial and for leave to file the third amended complaint would have suspended the finality of the order (Rule 73(a), Fed.R.Civ.P.: United States v. Crescent Amusement Co., 323 U.S. 173, 177, 65 S.Ct. 254, 89 L.Ed. 160 (1944)). If the order was final, these motions were, in effect, timely motions under Rule 59, Federal Rules of Civil Procedure, to alter or amend judgment (Pierre v. Jordan, 333 F.2d 951, 955 (9th Cir. 1964)), and the granting of the motion to file the third amended complaint revived the action. Thus neither of the two orders set forth in the Notice of Appeal was as of the date of its filing a final order from which an appeal could be perfected.
 
 
 26
 The filing of the September 9, 1965, order hereinabove referred to was not, however, the final action of the District Court. Later on that same day (as is apparent from a reading of the two documents), the Court entered a second order which, after four pages of discussion and citation of authority, concludes with this language:
 
 
 27
 "Based upon the foregoing, it is apparent that plaintiffs have failed to state a claim upon which relief can be granted and that the Complaint, Amended Complaint, Second Amended Complaint, and Third Amended Complaint are hereby dismissed, and the defendant shall recover its costs herein expended."
 
 
 28
 This latter order being clearly a final and appealable order (United States v. Frank B. Killian Co., 269 F.2d 491 (6th Cir. 1959)), the question presented is whether on the present state of the record an appeal from that order has been perfected in such manner as to make it reviewable by this court.
 
 
 29
 In language not affected by amendment in 1966, Rule 73(b) provided, "The notice of appeal shall specify the parties taking the appeal; shall designate the judgment or part thereof appealed from; and shall name the court to which the appeal is taken." (Emphasis supplied.) In language which has been altered in form but not in substance by the 1966 amendment, former Rule 73(a) then provided, "A party may appeal from a judgment by filing with the district court a notice of appeal. Failure of the Appellant to take any of the further steps to secure the review of the judgment appealed from does not affect the validity of the appeal, * * *" (Emphasis supplied.) Reading these two provisions in pari materia makes it apparent that the court to which appeal is attempted to be taken is without jurisdiction unless within the specified period a notice of appeal is filed which, among other things, designates "the judgment or part thereof appealed from." In response to appellee's contention that because no proper notice of appeal was filed this court lacks jurisdiction, appellant in essence responds only that appellee was not prejudiced by the fact that he "inadvertently referred to the wrong order * * * especially in the light of the fact that the final order from the District Court appeared as part of appellant's opening brief." (Reply Brief.) The latter observation scarcely requires comment; if a jurisdictional defect existed, it could not be cured by a recitation in a brief.
 
 
 30
 The thrust of appellant's argument on this point centers upon a statement contained in appellee's brief which, with its footnote, reads:
 
 
 31
 "The Government must further candidly state that the only inconvenience to it because the notice of appeal was from the second, rather than the third, amended complaint is the difficulty of ascertaining whether appellant chooses to stand on his second or third complaint. [Footnote:] Appellant apparently intends to stand on his third amended complaint, as this is the one used in his statement (Br. 6-8)."
 
 
 32
 However, the accuracy or the adequacy of an appellee's understanding as to the pertinent facts of an attempted appeal is not the criterion upon which the validity of a notice of appeal is to be determined. The Rule does not state that an appeal is perfected if the appellee learns of "the judgment or part thereof appealed from" by a reading of appellant's brief, by reading an account in the daily press, by hearing of it on a street corner, or by some other means de hors the record. It is no response to a Statute of Limitations defense to contend that a defendant extraneously came into possession of all pertinent information the day before the Statute ran even though the complaint was filed the day after, and the unequivocal language of the Rule above quoted establishes a similar clear and concise requirement. Satisfaction of that requirement, i. e., specifying the judgment or parts thereof appealed from, is a jurisdictional requisite to appeal to this court.
 
 
 33
 Appellant points to the trend in recent decisions toward liberality in the interpretation of rules relating to timeliness and efficacy of notices of appeal, and this court recognizes that trend, as did the appellee in its brief. However, adopting a liberal interpretation of a statute (or of a rule) is one thing, and completely nullifying its obvious intent by judicial fiat is quite another. In the present situation, appellant is not simply requesting liberality in construction of Rule 73, but is blandly asking that this court ignore the existence of the cited provisions.
 
 
 34
 Appellant cites only one authority in this regard, Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). While isolated quotations from Foman appear to support appellant's position, that case is readily distinguishable upon its facts. There the appellant filed two notices of appeal within thirty days of two orders of the District Court, and the Court of Appeals of its own accord held the first notice to have been premature because filed during the pendency of motions to vacate and amend, and therefore of no effect, and further held the second notice of appeal ineffective for failure to specify that the appeal was being taken from that judgment as well as from the orders denying the motions. The Supreme Court held that, "With both notices of appeal before it (even granting the asserted ineffectiveness of the first), the Court of Appeals should have treated the appeal from the denial of the motions as an effective, although inept, attempt to appeal from the judgment sought to be vacated." (371 U.S. p. 181, 83 S.Ct. p. 229.) No such situation existed in the present case, and the precise quotation of two inappropriate orders and the total omission of the critical third can scarcely be characterized as being merely "inept." Similarly, we recognize and are totally in accord with the portion of Foman opining that it is "entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of * * * mere technicalities," but in contradistinction reiterate that we are here dealing with a jurisdictional requirement.
 
 
 35
 In addition to Foman, the liberal trend mentioned earlier has found expression in Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962); in Thompson v. Immigration & Naturalization Service, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964); and in Wolfsohn v. Hankin, 376 U.S. 203, 84 S.Ct. 699, 11 L.Ed.2d 636 (1964). Each of these cases, however, presented a circumstance favorable to the plaintiff-appellant and without counterpart in the present case. In Harris, it was stated (371 U.S. p. 217, 83 S.Ct. p. 285) that "the record contains a showing of unique circumstances sufficient that the Court of Appeals ought not to have disturbed the motion judge's ruling," where the latter had granted an extension of time within which to file a notice of appeal, and within which such filing was made. It is to be noted that appellant there relied on the action of the District Court in granting the extension, even though it was later held unwarranted since no "excusable neglect" was shown. (Fed.R.Civ.P., 73(a)). In a five-to-four decision in Thompson the majority held the cause to "fit squarely within the letter and spirit of Harris," and in circumstances again found to be "unique" found the existence of appellate jurisdiction. Wolfsohn, another five-to-four decision, is an eight-line per curiam granting certiorari and reversing on the basis of Harris and Thompson. However, in a significant dissenting opinion in which he was joined by Justices Harlan, Stewart and White, Justice Clark stated (371 U.S. p. 203, 84 S.Ct. p. 699):
 
 
 36
 "I have concluded that Harris Truck Lines v. Cherry Meat Packers should be confined to its peculiar facts, i. e., a finding of `excusable neglect' under Rule 73(a) of the Federal Rules of Civil Procedure. I say this, although I joined Harris, because the Court has used Harris to spawn the present hopeless confusion which I never contemplated at the time of its decision. Harris was the authority upon which the court rested Thompson v. Immigration & Naturalization Service, despite the fact that Thompson involved Rules 52 (b) and 59(b) and (e) with their specific requirements that the motion must be made or served not later than ten days after the entry of judgment. The Court brushed aside these express and unambiguous mandates of Congress with the assertion that Thompson `fits squarely within the letter and spirit of Harris.' And now comes a third case * * * which further compounds the subversion of the rules. * * *" (Citations omitted.)
 
 
 37
 Although this expression reflects only the position of a minority of the Court so far as Wolfsohn is concerned, it seems fair to conclude that the Court does not seem presently disposed to extend the so-called liberal trend beyond cases presenting "unique circumstances," and in which reliance, mistaken or otherwise, was placed on prior judicial action by appellant. No such situation here exists, nor does any other circumstance justifying our disregarding what Justice Clark has so accurately termed "express unambiguous mandates."
 
 
 38
 For the reasons herein indicated, I would dismiss this appeal on the ground that it was not taken from a final judgment.